**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| SIERRA CLUB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action No. 10-CV-303 |
| DAIRYLAND POWER COOPERATIVE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

RULE 26(f) JOINT PRETRIAL REPORT AND DISCOVERY PLAN

Plaintiff, Sierra Club, by its counsel, David Bender and Pamela McGillivray, McGillivray Westerberg & Bender LLC, and Defendant, Dairyland Power Cooperative, by its counsel, Elizabeth Williamson and Eric Gotting, Winston & Strawn LLP and Jeffrey Landsman, Wheeler Van Sickle & Anderson, S.C., talked and conferred on September 3, 2010 via a telephone conference to discuss the matters set forth in Rule 26 and the Court's Preliminary Pretrial Conference Order. The parties submit the following Rule 26(f) Joint Pretrial Report. The Preliminary Pretrial Conference in this case is set for September 15, 2010 at 9:00 a.m. The parties' positions are as follows:

**PRETRIAL CONFERENCE REPORT**

1. Nature of the Case. Plaintiff is seeking relief under the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604, and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, based on Plaintiff's allegations that Defendant violated the

Clean Air Act at its power plants located in Alma, Buffalo County, and Genoa, Vernon County, Wisconsin. As discussed below, the Defendant has moved to dismiss some of the Plaintiff's claims as barred by the statute of limitations and the "concurrent remedies doctrine", for failure to state a claim upon which relief can be granted, and as being outside of the Court's subject matter jurisdiction.

2.      Related Cases. There are no cases related to the instant matter. However, as the parties have noted in their briefing on the Defendant's Motion to Dismiss, some of the arguments in support of Defendant's Motion, if the Court reaches them, may be decided by the Seventh Circuit in *United States v. Cinergy Corp.*, Appeal Nos. 09-3344, 09-3350, 09-3351 (7th Cir.) (oral arguments set for September 20, 2010).

3.      Material Factual and Legal Issues to Be Resolved at Trial. The material factual and legal issues to be resolved at trial include the following:

Plaintiff states as follows:

a) whether Defendant emitted smoke from the stacks of their power plants that violated the applicable limits on "visible emissions" or "opacity" set by regulation and Dairyland's permits (First Claim, Compl. ¶¶ 100-103);

b) whether Defendant violated the applicable permit limit on carbon monoxide (CO) emissions from the "Madgett" unit at the Alma, Wisconsin, plant (Second Claim, Compl. ¶¶ 104-107);

c) whether Defendant undertook physical changes or changes in operation at its Alma and Genoa plants without obtaining a permit required under the Prevention of Significant Deterioration (PSD) provisions of the Clean Air Act, whether those changes

were exempt as "routine maintenance repair and replacement," and whether those changes resulted in (based on the applicable pre-project estimating method) a "significant emissions increase" (Third Claim, Compl. ¶¶ 108-112);

d) if Defendant made non-exempt changes constituting major modifications, whether emissions from Defendant's plant subsequently exceeded limits that represent "best available control technology" or "BACT" (Fourth Claim, Compl. ¶¶ 113-118);

e)  if Defendant made non-exempt changes constituting major modifications, whether Defendant failed to demonstrate that emissions from its plants do not cause or contribute to a violation of ambient air quality standards or maximum allowable increases established by the United States Environmental Protection Agency and the Wisconsin Department of Natural Resources (Fifth Claim, Compl. ¶¶ 119-124);

f) if Defendant made non-exempt changes constituting major modifications, whether the Defendant violated Title V of the Clean Air Act, the Wisconsin Administrative Code, and the operating permits issued to the Defendant by failing to apply for and receive the required modified permits, by falsely certifying compliance with all applicable requirements, and by failing to identify various requirements as applicable to Defendant's plants (Sixth Claim, Compl. ¶¶ 125-131);

g) whether Defendant failed to obtain a permit pursuant to Wisconsin Administrative Code chapter NR 406 for changes made to Defendant's plants (Seventh Claim, Compl. ¶ 132-137);

h) whether Defendant violated permits issued to Defendant and/or the Wisconsin Administrative Code by failing to continuously monitor emissions from its plants (Eighth Claim, Compl. ¶¶ 138-140);

i) whether the Plaintiff is entitled to declaratory relief (Ninth Claim, Compl. ¶¶ 141-142); and

j) the appropriate injunctive relief and penalties for any violations found by the Court, considering, *inter alia*, the factors in 42 U.S.C. § 7413(e).

Defendant states as follows:

As is evident from Plaintiff's list of issues, this case involves complex matters of law and fact spanning three different plants, which consist of seven separate generating units, over a seventeen year period (from 1993 to 2009). To begin, Claims 1 and 2 allege that Dairyland's Alma, Madgett, and Genoa plants violated the Clean Air Act ("CAA") and Wisconsin State Implementation Plan ("SIP") by exceeding visible emission permit limits (i.e., opacity) at all plants and Carbon Monoxide ("CO") permit limits at the Madgett plant. Specifically, Plaintiff asserts it has identified "thousands of occasions" of alleged opacity exceedances and "at least thirteen (13) different occasions, and likely many more" of purported CO exceedances. Significantly, each alleged exceedance must be evaluated with respect to applicable factual and legal elements. For instance, factual issues include each emissions measurement and the accuracy thereof. Moreover, legal issues concern whether each emission is a permit violation or a violation of the Wisconsin SIP provisions, as well as the applicability of permit limitation exclusions. Plaintiff's standing to bring Claims 1 and 2 is also at issue.

Plaintiff further alleges that Dairyland violated the CAA by commencing construction on 22 separate projects at the seven different generating units (Alma 1-5, Madgett, and Genoa 3), taking place over nearly two decades, without obtaining a Prevention of Significant Deterioration ("PSD") permit. Twenty of the 22 projects are before the court in a Motion to Dismiss as barred by the relevant statute of limitations and the concurrent remedy doctrine. Plaintiff also alleges violations of the Title V permit because Dairyland did not apply for permit revisions based on these projects. Dairyland has moved to dismiss the Title V claims based on lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

In addition to the legal issues raised in the Motion to Dismiss, numerous other legal issues are present, such as whether each project constituted a "major modification" requiring a PSD permit, which involves an evaluation of emissions from each project, as well as the applicability of any exclusions, such as the demand growth exclusion. Furthermore, extensive factual issues exist concerning each of these projects, such as the occurrence, existence, cause, nature, and extent of the work allegedly performed. Lastly, if this Court determines that Dairyland violated the CAA for any of these projects, Sierra Club's remedy will be at issue on a project-by-project basis.

Based on extensive experience in these types of cases, Dairyland's outside counsel anticipates that approximately 15-20 experts will be involved in the liability and remedy phases of this lawsuit.

4. Amendments to Pleadings. Plaintiff does not anticipate amending the pleadings at this time, but believes that discovery may result in a need to revise the

pleadings. The parties' positions regarding amendments to the pleadings are set forth in Paragraph 14 below.

5. Additional Parties. The parties do not anticipate additional parties at this time, but reserve their right to seek leave to add parties should the need arise.

6. Estimated Trial Length. The Parties anticipate that trial will take two (2) weeks on liability. Defendant proposes two (2) weeks on remedy; Plaintiff proposes one (1) week on remedy.

7. Other Issues. Defendant requests that this Court issue orders bifurcating the liability and remedy phases of discovery and trial, as well as partially staying discovery pending a decision on Defendant's Motion to Dismiss.

Bifurcation

Defendant requests that the Court bifurcate the case into two phases – liability and remedy – with discovery and trial on the liability phase occurring before discovery and trial on the remedy phase pursuant to Federal Rule of Civil Procedure 42(b). As noted below, Plaintiff is not opposed to bifurcation.

In this court, bifurcation may be granted if: 1) it would avoid prejudice or promote judicial economy; 2) it would not unfairly prejudice the non-movant; and 3) separate trials would not violate the Seventh Amendment. *Houseman v. United States Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999); *Brotherhood Ry. Carmen Division v. Atchison, Topeka and Santa Fe Railway Co.*, 956 F.2d 156, 159 (7th Cir. 1992) ("[T]he bifurcation of liability and remedy is common in judicial proceedings."); *Chlopek*

*v. Fed. Ins. Co.*, 499 F.3d 692, 697, 700 (7th Cir. 2007) (affirming this court's bifurcation of a products liability case into separate trials on liability and damages).

      Bifurcation in this case is necessary to promote judicial economy and efficiency due to the complexity of the legal issues and particularly in light of the significant number of projects (22 projects) and purported emissions violations at issue spread out over 17 years. In fact, cases of this nature are routinely bifurcated, even when many fewer projects are at issue. *United States, et al. v. Alabama Power Co.*, No. 2:01-cv-152-VEH (N.D. Ala.); *Commonwealth of Pennsylvania, et al v. Allegheny Energy, Inc., et al.*, No. 2:05-cv-0885-GLL (W.D. Pa.); *United States v. Duke Energy Corp.*, 1:00-cv-01262-NCT-WDD (M.D.N.C.); *United States, et al. v. Cinergy Corp.*, No. 1:99-cv-1693-LJM-JMS (S.D. Ind.); *United States v. East Kentucky Power Coop.*, No. 5:04-cv-34-KSF (E.D. Ky.); *United States v. Ohio Edison Co.*, No. C2-99-1181 (S.D. Ohio); *United States v. Illinois Power Co.*, No. 99-833-MJR (S.D. Ill.); *Cinergy*, 495 F. Supp. 2d 909 (S.D. Ind. 2007).

      The liability and remedy issues in this case are separate and distinct. Specifically, expert and fact witnesses, as well as written discovery issues, will not overlap. The liability phase will focus on Clean Air Act permitting and preconstruction permit requirements. In contrast, the remedy phase will center on damage issues, such as natural resource impacts and air modeling results. The magnitude of discovery, just to address liability issues standing alone, will be remarkable considering the project-related materials, corporate documents, and emissions data for each of the projects and alleged emissions violations, in addition to the numerous employees over nearly two decades who may be needed as fact witnesses.

As such, bifurcation could save the parties and the court significant amounts of time and expense. If the Defendant prevails, even in part, on particular projects or emissions issues in the liability phase, discovery and trial on remedy issues will be narrowed or possibly completely avoided.

This is also significant given that preventing any unnecessary costs is particularly important in light of Defendant's corporate structure. Specifically, Defendant Dairyland Power Cooperative, is not-for-profit, non-stock cooperative that provides wholesale electricity to 25 member distribution cooperatives and 17 municipal utilities serving over 600,000 residents in Wisconsin, Minnesota, Iowa and Illinois, with its headquarters located in La Crosse, Wisconsin. Electric cooperatives such as Defendant were formed to provide electric service to their owner-members at the lowest reasonable cost consistent with adequate and reliable service. Part of Dairyland's mission is to "work with our members to improve the quality of life of their customers and the economic and social well-being of the region."[1]

The vast majority of Dairyland's members are rural residential customers. Approximately 60% of the electric energy distributed by Dairyland is sold in Wisconsin. In every Wisconsin county where Dairyland sells electricity, the per capita income is well below the state average. Since Dairyland is a non-stock cooperative and operates on a not-for-profit basis, increased costs will eventually be paid by Dairyland's customers, while cost reductions and costs avoided will benefit Dairyland's customers rather than any shareholders.

[1] http://dairynet.com/who_we_are/mission.php

Plaintiff does not oppose a request to bifurcate the trial into two phases, provided a judgment on both liability and remedy can be entered in this case within a reasonable time.

Stay

Defendant requests that discovery be partially stayed until the Court rules on its pending Motion to Dismiss because discovery on projects at issue in the Motion may become wholly irrelevant or limited substantially by the Court's ruling. Defendant is not requesting a stay of discovery regarding Claims 1 and 2.

The Court has broad discretion to stay discovery until preliminary issues that could dispose of the case are decided. Fed. R. Civ. P. 26(c) (allowing the court to issue an order "specifying terms, including time and place, for … discovery"); *Enoch v. Tienor*, 2008 WL 410656, *1 (E.D. Wis. 2008, Feb. 11, 2008) (citing *Gettings v. Building Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003)). This Court has frequently granted motions to stay discovery pending a decision on a motion to dismiss. *See, e.g.*, *Schultz v. Wisconsin*, 2009 WL 1686580, *1 (W.D. Wis. June 15, 2009); *Baumgardt v. Wausau School Dist. Bd. Of Educ.*, 2007 WL 5650180, *1 (W.D. Wis. Feb. 15, 2007); *Malone v. Clark*, 2004 WL 2053284, *1 (W.D. Wis. Sept. 13, 2004) ("neither party will be prejudiced by a temporary stay of discovery."); *Flakes v. Frank*, 2005 WL 1276370, *1 (W.D. Wis. May 26, 2005) (lifting a stay on discovery that had been imposed pending the resolution of a partial motion to dismiss).

Considering the complexity of the issues in this case, as well as the scope and considerable time period over which the projects occurred, as previously described, Defendant requests that discovery be stayed to promote judicial economy and efficiency by temporarily sparing the parties from expending the significant resources that would be required to undertake written, deposition, and expert discovery on the 20 projects addressed in the Motion to Dismiss.

Plaintiff opposes this proposal.

## DISCOVERY PLAN

8. Rule 26(f)(3)(A). The parties agree that initial disclosures will be due on September 22, 2010. The timing of expert and pretrial disclosures are discussed in Paragraphs 16 and 18 below.

9. Rule 26(f)(3)(B). As discussed above, Defendant requests that the case be bifurcated into liability and remedy phases and that discovery be limited accordingly. Plaintiff does not oppose this request, provided a final judgment on both liability and remedy can be entered in this case within a reasonable time.

Plaintiff intends to conduct discovery as to each of Plaintiff's claims, matters related to appropriate remedies including injunctive relief, and to Defendant's expected affirmative defenses. These topics will include, but not necessarily be limited to:

a) The emission rates by Defendant's power plants;

b) When emission monitoring was conducted by the Defendant;

c) What permits were obtained by Defendant and what applications and other documents were submitted by Defendant to regulatory agencies related to permits and compliance;

d) What physical and operational changes occurred at Defendant's plants, the dates of such changes, and information related to the cost, nature, extent and purpose of each change;

e) What "best available control technology" ("BACT") is for Defendant's plants and the difference in pollution between Defendant's emissions and what the emissions would have been if Defendant had complied with BACT; and

f) Information related to the factors for penalties in 42 U.S.C. § 7413(e), and related to appropriate injunctive relief, including pollution impacts from Defendant's emissions.

Defendant intends to conduct discovery on each of Plaintiff's claims and requests for relief, as well as Dairyland's defenses. These topics include but are not limited to:

a) Plaintiff's alleged standing to bring suit;

b) The interpretation and application of the relevant regulations by the Wisconsin Department of Natural Resources and the United States Environmental Protection Agency;

c) Maintenance practices in the coal-fired electric utility industry;

d) Calculation of emissions, if any, resulting from the projects alleged in the Complaint;

  e) Independent factors affecting emissions of the units at issue during the time of the projects identified in the Complaint;

f) Plaintiff's knowledge of the projects;

g) Plaintiff's access to emissions data and other information relevant to the claims in the Complaint;

h) Plaintiff's coal-fired power plant initiative and "Beyond Coal Campaign" concerning New Source Review laws and regulations; and

i) Alleged damages, including but not limited to natural resource damages, health studies, impact modeling, and Plaintiff's past positions on Best Available Control Technology.

10. Rule 26(f)(3)(C). The parties have discussed the issue of electronic discovery and agree to preserve electronically stored information ("ESI") that is believed to be reasonably related to the issues in this action. Plaintiff requests that Defendant produce ESI in unlocked, native format for information stored in commonly used formats for appropriate data files such as input and output files for electronic programs (e.g., EGEAS, PROMOD, GADS and air pollution modeling) to allow data to be used by Plaintiff without requiring reentry of the data, within the parameters stated in the Federal Rules of Civil Procedure. In response, Defendant states that it is not in a position to agree to such request without knowing what types of data files will, in fact, be requested and what options exist for providing such information. If responsive, non-privileged data files are identified during discovery, Defendant will work with Plaintiff to provide reasonable access to such files in a manner that is not unduly burdensome or

costly. The parties agree that documents that do not contain data compilations can be converted and produced in a format convenient to both parties.

Plaintiff also requests that if the parties produce an index of discovery documents to the other party as part of any discovery response(s), the index will be produced in native electronic format. Defendant agrees to consider this approach on a case-by-case basis.

11. Rule 26(f)(3)(D). The parties agree that the inadvertent or mistaken production of privileged or protected documents, including confidential business information that inadvertently is not marked as such for purposes of this litigation, will not constitute a waiver of that document's privilege or protection. If a privileged document is inadvertently or mistakenly produced, the disclosing party shall so inform the receiving party and the receiving party shall immediately return the privileged document and any copies of that document to the disclosing party, as well as destroy any other documents (e.g., attorney notes) containing information derived from the privileged materials. The receiving party shall also be barred from using that privileged document or any copies thereof, or any information derived therefrom, in this action or otherwise. If a protected document was produced without the appropriate designation, the disclosing party shall so inform the receiving party and the receiving party shall affix said document with the appropriate designation. In the event the receiving party disseminated the protected document to other entities or individuals who are not entitled to review the document, the receiving party shall retrieve the

document immediately. The parties anticipate further addressing these issues through a stipulated protective order as noted in Paragraph 13 below.

12. Rule 26(f)(3)(E). The parties agree that depositions of experts for whom reports have been produced pursuant to Rule 26(a)(2)(B) do not count towards the limits in Rule 30(a)(2)(A). The parties stipulate that draft expert reports are not discoverable. Defendant also proposes extending the time for expert depositions, if needed, to 14 hours over two consecutive days.

13. Rule 26(f)(3)(F). The parties anticipate a stipulated protective order or, if agreement cannot be reached, that Defendant will move for a protective order to protect confidential business information.

**PROPOSED SCHEDULE**

14. Amendments to the Pleadings: Plaintiff requests that amendments without leave of court be allowed for sixty (60) days after the Rule 26(f) conference, which would be November 2, 2010. To the extent that Defendant's request for a discovery stay is granted, Plaintiff requests that deadlines to amend pleadings are also stayed. Plaintiff also does not oppose a deadline for motions to amend the pleadings, but asks that such deadline not be set prior to thirty (30) days before close of discovery. Defendant does not oppose Plaintiff's request regarding amendments without leave of court. Defendant, however, asks that amendments to the pleadings not be permitted after the dispositive motions deadline.

15. Dispositive Motions. Plaintiff proposes that any dispositive motions be filed with the Court five (5) months before the trial date and that responses and replies

shall be filed in accordance with the Court's standard summary judgment briefing schedule. Given the size and complexity of the case, Defendant proposes that dispositive motions not be due prior to one (1) month before the close of discovery.

16. Disclosure of Experts and Expert Reports. The parties agree that the disclosure of experts and accompanying reports pursuant to Fed. R. Civ. P. 26(a)(2) shall be prior to the deadline for dispositive motions, as determined by the Court.

Sequence: Plaintiff proposes that the proponent on an issue (i.e., the party that bears the burden of proof at trial on the issue) disclose its experts on that issue first, and the responding party follows, with no reply.

Defendant proposes, instead, that Plaintiff first disclose all of its experts with reports, followed by all of Defendant's experts and reports, with an opportunity for Plaintiff to reply. Even where Defendant has the burden of proof (e.g., affirmative defenses), it will still require a reasonable opportunity to depose Plaintiff's experts and review their reports to ascertain whether an affirmative defense should be asserted and, if so, the nature and scope of the defense. Under Defendant's approach, Plaintiff will still have an opportunity to reply.

Timing: Defendant proposes that the deadline for identifying experts and producing their reports be 8 ½ months prior to the trial for Plaintiff and 45 days later for Defendant if the case is bifurcated as discussed above, and 14 ½ months prior to trial for Plaintiff and 45 days later for Defendant if the case is not bifurcated. Plaintiff agrees to this concept. However, it assumes a longer timeline to trial than is the Court's typical practice. Therefore, if the Court

establishes a trial date in fewer than 18 months, Plaintiff proposes that proponents disclose experts and reports six months prior to trial and that the responding party disclose experts and reports 30 days later.

17. Discovery Cut Off. Plaintiff proposes that discovery close 30 days before trial. Given the size and complexity of this case, Defendant proposes that fact and expert discovery on the liability and remedy phases be closed 4 months before the respective trial dates for each phase.

18. Final Pre-Trial Conference. The parties agree that the final pre-trial conference shall be held 14 days before trial. Defendant proposes that motions in limine and Rule 26(a)(3) disclosures be made at least 30 days prior to the final pretrial, with responses filed 14 days before the final pretrial. Plaintiff proposes that the motions in limine and Rule 26(a)(3) disclosures be made no sooner than 14 days after the close of discovery. If the Court closes discovery 30 days before trial, Plaintiff proposes that motions that motions in limine and Rule 26(a)(3) disclosures be made 14 days prior to the final pretrial, with responses filed 7 days before the final pretrial. The parties further agree that pretrial motions that may require an evidentiary hearing, such as motions to exclude expert testimony, be filed at least 60 days prior to trial, with responses filed 21 days later.

19. Trial. Defendant proposes a trial date for the liability phase of the case on December 12, 2011, and a trial date for the remedy phase on June 11, 2012.

Plaintiff proposes a trial date approximately one year from today.

Dated this 10th day of September, 2010.

Attorneys for Plaintiff

MCGILLIVRAY WESTERBERG & BENDER LLC

By: /s/ Pamela R. McGillivray
David C. Bender, SBN 1046102
Pamela R. McGillivray, SBN 1034194
305 S. Paterson Street
Madison, WI 53703
Tel: (608) 310-3560
Fax: (608) 310-3561

MIDWEST ENVIRONMENTAL ADVOCATES, INC.

/s/ Elizabeth R. Lawton
Elizabeth R. Lawton
Wis. Bar No. 1050374
551 W. Main Street, Suite 200
Madison, WI 53703
Tel: (608) 251-5047
Fax: (608) 268-0205
blawton@midwestadvocates.org

Attorneys for Defendant

/s/ Nash E. Long, III
Nash E. Long, III*
**WINSTON & STRAWN LLP**
214 N. Tryon Street
22nd Floor
Charlotte, NC 28202
Email: nlong@winston.com
(704) 350-7700
(704) 350-7800 ~ Fax

John M. Holloway, III*
Elizabeth C. Williamson*
Eric P. Gotting*
**WINSTON & STRAWN LLP**
1700 K Street, N.W.
Washington, D.C. 20006
Email: jholloway@winston.com

ewilliamson@winston.com
(202) 282-5000
(202) 282-5100 ~ Fax

Jeffrey L. Landsman
**WHEELER, VAN SICKLE & ANDERSON, S.C.**
25 West Main Street, Suite 801
Madison, WI 53703
Email: JLandsman@wheelerlaw.com
(608) 255-7277
(608) 255-6006 ~ Fax

*Attorneys for Dairyland Power Cooperative*

**Admitted Pro Hac Vice*

CERTIFICATE OF SERVICE

I hereby certify that on September ____, 2010, I caused a true and correct copy of the foregoing Report to be served upon all of the parties appearing in this cause of action by e-mail addressed to the following through this Court's CM/ECF system:

Christa Westerberg westerberg@mwbattorneys.com

Elizabeth Lawton blawton@midwestadvocates.org, advocate@midwestadvocates.org, paralegal@midwestadvocates.org

Elizabeth C Williamson ewilliamson@winston.com

Eric P. Gotting egotting@winston.com

Jeffrey L. Landsman jlandsman@wheelerlaw.com

John M Holloway jholloway@winston.com

Nash E Long nlong@winston.com, kparsons@winston.com

Pamela R McGillivray mcgillivray@mwbattorneys.com

/s/David C. Bender____________
David C. Bender